UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BUTLER,

    Plaintiff,

v.                                                         Case No. 04-70342

UNITED STATES DEPARTMENT OF       Honorable Patrick J. Duggan
JUSTICE,

    Defendant.
_____/

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on April 29, 2005.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On January 30, 2004, *pro se* Plaintiff James Butler, currently confined at Newberry Correctional Facility, Newberry, Michigan, filed suit pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, alleging that Defendant, the United States Department of Justice ("DOJ"), improperly denied his request for production of certain documents relating to his state court murder conviction. This matter is currently before the Court on Defendant's Motion for Summary Judgment, filed March 18, 2005, and Plaintiff's Cross Motion for Summary Judgment, filed April 13, 2005. For the

reasons set forth below, Defendant's Motion for Summary Judgment is granted and Plaintiff's Cross Motion for Summary Judgment is denied.

**I.   Background**

Butler was the eighth defendant in the federal criminal case of *United States v. Jones*, E.D. Mich. No. 87-CR-80648.  The defendants were charged with conspiracy to possess with intent to distribute heroin and RICO counts.  Butler contends that an informant, Dion Wilson, gave grand jury testimony in connection with the case, implicating Butler.  Butler was acquitted at jury trial on April 5, 1988.[1]  (Docket entries #470 & #503).

On March 17, 2003, Plaintiff mailed a FOIA/PA request to the DOJ Referral Unit seeking the following documents:

> 1.  All information pertaining to JAMES BUTLER provided by Government Informant DION WILSON.  Including, Investigative Grand Jury Testimony on Government Informant Dion Wilson . . . taken in May and September 1986, Case 87-CR-80648-DT, United States -vs- James Butler, (1st named Defendant = Milton Butch Jones). . . .
>
> 2.  Criminal Record of Government Informant Dion Wilson . . .
>
> 3.  Agreement of Cooperation Report of Dion Wilson.
>
> 4.  All investigative Reports by collaborating agencies, Detroit Police, Wayne County Prosecutors, DEA Agents ect. [sic] . . . Pertaining to James Butler.

(Compl. Ex. 8).

Plaintiff's request was referred to the Executive Office for U.S. Attorneys (EOUSA), the Drug Enforcement Agency (DEA), and the Criminal Division.  (Def.'s Mot. Ex. 4B).

---

[1] Butler was convicted for a drug-related murder in *State of Michigan v. James Earl Butler*, Recorders Court No. 87-57896.  (Compl. ¶ 6; Compl. Ex. 1).  Butler is currently serving a life sentence for this conviction.

**A. EOUSA**

The EOUSA divided Plaintiff's request into two files: (1) 03-1244, relating to information Butler requested about himself, and (2) 03-1245, relating to information Butler requested about Dion Wilson.

1. Documents relating to Don Wilson

In a letter dated May 12, 2003, the EOUSA denied Plaintiff's request for records on "Dion Wilson" under both the FOIA and PA, noting that "[r]ecords pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest  and that significant public benefit would result from the disclosure of the requested records." (Def.'s Mot. Ex. 1B). Defendant contends that the release of these records would be in violation of the PA. Moreover, Defendant contends that these records are exempt from disclosure pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

On June 17, 2003, Plaintiff filed an administrative appeal with the Office of Information and Privacy of the DOJ. (Def.'s Mot. Ex. 1C). The Office of Information and Privacy affirmed the EOUSA's denial by letter dated September 12, 2003. (Def.'s Mot. Ex. 1D).

2. Documents relating to Plaintiff

On January 8, 2004, the Criminal Division of the DOJ forwarded records relating to Butler to the EOUSA. (Def.'s Mot. Ex. 2A). In a letter dated February 7, 2004, the EOUSA responded to Plaintiff's request. (Def.'s Mot. Ex. 2B). The letter stated that of the 81 pages

reviewed, 23[2] pages were withheld in full and 58 pages were referred to the DEA. (Def.'s Mot. Ex. 2B). The DEA returned the 58-page document. By letter dated March 14, 2005, the EOUSA informed Plaintiff that the 58 pages would be withheld in full. (Def.'s Mot. Ex. 3A).

According to the EOUSA, Document 1, Document 2, and the fifty-eight page document [hereinafter "Document 3"] were withheld pursuant to PA exemption (j)(2). (Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶¶ 6a & 9; Ex. 2B; Ex. 3, Kornmeier Decl. III ¶ 7a; Ex. 3A). Moreover, the EOUSA asserts that Document 1 was withheld pursuant to FOIA exemptions (b)(3), (b)(5), (b)(7)(C), and (b)(7)(D). (Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶¶ 6b-6e; Ex. 2B). The EOUSA contends that it withheld Document 2 pursuant to FOIA exemptions (b)(5) and (b)(7)(C). (Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶¶ 7b-7c; Ex. 2B). Finally, the EOUSA contends that it withheld Document 3 pursuant to FOIA exemptions (b)(5), (b)(7)(C), and (b)(7)(D). (Def.'s Mot. Ex. 3, Kornmeier Decl. III ¶¶ 7b-7d; Ex. 3A).

**B. DEA**

The DEA divided Plaintiff's request into two files: (1) 03-0947-P, relating to information Butler requested about himself, and (2) 03-0955-F, relating to information Butler requested about Dion Wilson.

1. Documents relating to Dion Wilson

By letter dated April 23, 2003, the DEA informed Plaintiff that his "Freedom of

---

[2] The EOUSA is releasing one page to Plaintiff in a supplemental release. (Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶ 5 n.1). Therefore, 22 pages were withheld in full.

4

Information Act request pertaining to another individual" could not be processed until he provided "either proof of death or an original notarized authorization (privacy waiver) from Government Informant Dion Wilson." (Def.'s Mot. Ex. 4N). "Without proof of death or an original notarized authorization," the DEA contends that these records are exempt from disclosure pursuant to FOIA exemptions (b)(6) and (b)(7)(C). (*Id.*)

### 2. Documents relating to Plaintiff

By letter dated September 12, 2003, the DEA released portions of one page to Plaintiff and withheld 40 pages in full based on PA exemption (j)(2) and FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). (Def.'s Mot. Ex. 4, Wassom Decl. ¶ 13; Ex. 4G). In a letter dated October 9, 2003, Plaintiff administratively appealed to the Office of Information and Privacy of the DOJ. (Def.'s Mot. Ex. 4H). By letter dated November 26, 2003, the Office of Information and Privacy affirmed the DEA's denial. (Def.'s Mot. Ex. 4J).

The DEA then determined that the second volume of Plaintiff's DEA investigative file was missing from the Federal Records Center and was not searched at the time of the initial processing. Once the file was obtained, a review of the file revealed 10 additional pages responsive to Plaintiff's request for information about himself. (Def.'s Mot. Ex. 4, Wassom Decl. ¶¶ 17). By letter dated March 12, 2004, the DEA referred 2 of the 10 additional pages to EOUSA for consultation. The EOUSA returned the 2 pages and advised the DEA that portions of the pages should be withheld pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F). (*Id.* at ¶ 19; Ex. 4L).

By letter dated January 7, 2005, the DEA released portions of 9 of the 10 additional pages, including the 2 pages previously referred to the EOUSA. The DEA asserted PA

exemption (j)(2) and FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F) and relied upon EOUSA's assertion of FOIA exemptions (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F). (Def.'s Mot. Ex. 4M).

### C. Criminal Division

1. Documents relating to Dion Wilson

By letter dated September 16, 2004, the Criminal Division informed Plaintiff that it would not search for records on "Dion Wilson" absent either a signed release from Wilson, a showing that he was deceased, or that the release of the information sought would disclose the operations of the government sufficient to outweigh any privacy interests pursuant to the FOIA. (Def.'s Mot. Ex. 5.10). Defendant contends that these records are exempt from disclosure pursuant to FOIA exemptions (b)(6) and (b)(7)(C).

2. Documents relating to Plaintiff

In a letter dated January 8, 2004, the Criminal Division informed Plaintiff that there was only one record found within the scope of Plaintiff's request. The Criminal Division withheld the document in full pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D). (Def.'s Mot. Ex. 5.6). By letter dated February 2, 2004, Plaintiff administratively appealed the decision to the Office of Information and Privacy of the DOJ. (Def.'s Mot. Ex. 5.7). The Office of Information and Privacy upheld the Criminal Division's denial. (Def.'s Mot. Ex. 5.9).

### D. IRS

The Criminal Division referred one document from its files to the Internal Revenue Service ("IRS") because the document had originated at the IRS. In a letter dated January

6

28, 2004, the IRS informed Plaintiff that the document was being withheld in full.  The IRS contends that it withheld the report in full for two reasons: first, because the report is about an individual other than Plaintiff and thus, it is arguably unresponsive to Plaintiff's request; and second, because FOIA exemptions (b)(3) and (b)(5) justify withholding it in full and FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(D) allow withholding certain portions of the document.  (Def.'s Mot. Ex. 6, Tate Decl. ¶¶ 4-10; Ex. 7, Dowling Decl. ¶ 2).

### E. Plaintiff's Complaint

 On January 30, 2004, Plaintiff filed suit under the FOIA and PA in this Court.  In his prayer for relied, Plaintiff seeks to have the Court order production or forwarding of the documents that have been withheld in whole or in part. (Compl., "RELIEF" at 10, ¶¶ A&D).

## II.  Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to

7

look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III.  Applicable Law and Analysis

Here, the EOUSA, the DEA, the Criminal Division, and the IRS withheld information from Plaintiff under both PA and FOIA exemptions. In enacting the PA, "Congress was concerned predominantly with the increasing use of computers and sophisticated information systems and the potential abuse of such technology." *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342, 345 (10th Cir. 1983). The PA delineates duties and responsibilities for federal agencies that collect, store, and disseminate personal information about individuals. *Ely v. Dep't of Justice*, 610 F. Supp. 942, 945 (D.C. Ill. 1985). The main purpose of the PA is to forbid disclosure unless it is required by the FOIA. *DePlanche v. Califano*, 549 F. Supp. 685, 695 (D.C. Mich. 1982). Therefore, the Court will examine whether the FOIA allowed the agencies to withhold documents from Plaintiff.

The goal of the FOIA is to open up agencies to public scrutiny. *Norwood v. F.A.A.*, 993 F.2d 570, 573 (6th Cir. 1993) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S. Ct. 1592, 1604 (1976)). Exemptions are to be viewed narrowly. *Norwood*, 993 F.3d at 573

8

(citing *Rose*, 425 U.S. at 361, 96 S. Ct. at 1599). The government carries the burden of proving an exemption applies. *Norwood*, 993 F.3d at 573.

In *Booth Newspapers, Inc. v. Regents of University of Michigan*, 93 Mich. App. 100, 286 N.W.2d 55 (1979), the court noted the challenge it faced in resolving a FOIA dispute at the summary judgment level: "If it is clear that courts cannot simply accept government allegations that material sought in FOIA litigation is protected by statutory exemption, it is equally apparent that disclosure of the material in order to prove the defense would defeat the purposes of the exemption altogether." *Id.* at 111, 286 N.W.2d at 61. The court went on to explain that "[a] . . . method which has found considerable use in the Federal courts is the requirement that the body seeking to sustain its secrecy submit affidavits describing the disputed materials in sufficient detail to allow effective argument by the seeker and a fully informed decision by the court." *Id.* at 111-12, 286 N.W.2d at 61.

In this case, Defendant has submitted affidavits from individuals at the EOUSA, DEA, Criminal Division, and IRS. In this Court's opinion, the description of the disputed materials set forth in those affidavits suffices to allow the Court to make a fully informed decision as to whether those materials were properly withheld pursuant to FOIA exemptions (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F).

The FOIA, 5 U.S.C. § 552 provides, in pertinent part:

**(b)** [Disclosure under the FOIA] does not apply to matters that are--

\* \* \*

**(2)** related solely to the internal personnel rules and practices of an agency;

**(3)** specifically exempted from disclosure by statute . . . provided that such statute

9

(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld;

* * *

**(5)** inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

**(6)** personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

**(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, . . . or (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. §§ 552(b)(2), (b)(3), (b)(5), (b)(6), (b)(7) [hereinafter referred to as "exemption (b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F)," respectively].

Keeping these exemptions in mind, the Court will examine whether each agency properly withheld documents from Plaintiff.

### A. All Documents Relating to Dion Wilson

The Court believes that the agencies properly withheld from Plaintiff all documents relating to Dion Wilson pursuant to FOIA exemptions (b)(6) and (b)(7)(C). Plaintiff contends that Dion Wilson is an informant who gave grand jury testimony implicating Plaintiff in crimes.

Exemption (b)(6) protects information about individuals contained in "personnel and

10

medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." All information that relates to an individual qualifies for consideration under exemption (b)(6). *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602, 102 S. Ct. 1957, 1961 (1982). In determining whether releasing the information would constitute a clearly unwarranted invasion of personal privacy, courts must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175, 112 S. Ct. 541, 548 (1991) (internal citations omitted).

The Supreme Court has narrowly defined the relevant public policy interest in an analysis under exemption (6)(b) as "the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government." *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495, 114 S. Ct. 1006, 1012 (1994) (quotations and emphasis omitted). Plaintiff has not shown how releasing all documents relating to Wilson would contribute to the public's understanding of government activities. Consequently, releasing such information would constitute a clearly unwarranted invasion of Wilson's privacy interests, which strongly outweighs any public benefit that would flow from disclosure.

In addition, exemption (b)(7)(C) permits the withholding of records compiled for law enforcement purposes that "could reasonably be expected to constitute" an unwarranted invasion of privacy. The Supreme Court has held "as a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and when the request seeks no 'official

11

information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'" *U.S. Dep't of Justice v. Reports Comm. for Freedom of the Press*, 489 U.S. 749, 780, 109 S. Ct. 1468, 1485 (1989). Again, Plaintiff has failed to show how releasing information relating to Wilson will apprise Plaintiff of "official information" about government agencies.

### B. EOUSA Documents

In his Declaration, John Kornmeier, an attorney advisor with the EOUSA, describes the withheld documents as follows:

> Document 1 is an eight page prosecution memorandum dated July 16, 1987 from the United States Attorney's Office for the Eastern District of Michigan to the Organized Crime and Racketeering Section [of the DOJ]. The memorandum discusses the prosecution's theory of the criminal case against Mr. Butler and others. At the beginning of the memorandum, it states explicitly that it contains grand jury material. It presents legal opinions and discusses the appropriate way to handle the case. It discusses the participants, witnesses and their protection, and the evidence.
>
> * * *
>
> Document 2 is a fourteen page draft indictment prepared by the U.S. Attorney's Office in the Eastern District of Michigan on Mr. Butler's criminal case.

(Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶¶ 6-7).[3]

> [The fifty-eight page document ("Document 3")] is an incomplete affidavit of a DEA special agent . . . . The document is not about Mr. Butler. It is personal, private information about third parties. It includes third parties involved in a criminal enterprise, the law enforcement officers who are trying to break up the

---

[3] Defendant has not accounted for all 23 pages that were originally withheld by the EOUSA. Document 1 (eight page memorandum) and Document 2 (fourteen page indictment) only account for 22 pages. Moreover, Defendant has not indicated whether the page that is being released to Plaintiff in a supplemental release (see Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶ 5 n.1), is from Document 1, Document 2, or a separate document altogether.

enterprise, references to both DEA and FBI informants and the information they are providing, and how law enforcement officers are operating under cover.

(Def.'s Mot. Ex. 3, Kornmeier Decl. III ¶ 7).

Document 1 was properly withheld pursuant to exemption (b)(3), which provides that an agency may withhold documents "specifically exempted from disclosure by statute . . . ." Document 1, which contained grand jury material, was exempted from disclosure by FED. R. CRIM. P. 6(e). Rule 6(e) of the Federal Rules of Criminal Procedure qualifies as a "statute" for the purposes of FOIA exemption (b)(3). *See Rugiero v. U.S. Dep't of Justice*, 275 F.3d 534, 549 (6th Cir. 2001).

In addition, Documents 1 and 3 were properly withheld pursuant to Exemption (b)(7)(D) which protects against disclosure of information compiled during a criminal investigation that could reasonably be expected to disclose (1) the identity of a confidential source or (2) information furnished by a confidential source. Exception (b)(7)(D) is not waived even if the information provided by the source has been made public. *See Ferguson v. F.B.I.*, 957 F.2d 1059, 1069 (2d Cir. 1992).

The government bears the burden of establishing that exemption (b)(7)(D) applies to the documents withheld. *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 178-79, 113 S. Ct. 2014, 2022-23 (1993). Courts have considered the character of the crime as well as the source's relation to the crime in determining whether an "implied assurance of confidentiality can be inferred." *Id.* at 179, 113 S. Ct. 2023.

In this case, the investigation involved a narcotics distribution organization which was connected to a number of homicides. According to the EOUSA, Document 1 discusses

13

particular measures needed to protect individuals who provided information. (Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶ 22). Document 3 gives highly detailed information regarding confidential informants and discusses undercover agents. (Def.'s Mot. Ex. 3, Kornmeier Decl. III ¶ 20). Thus, the nature of the crime as well as the fact that the individuals discussed in Documents 1 and 3 were witnesses, informants, and undercover agents infer an assurance of confidentiality, qualifying Documents 1 and 3 for (b)(7)(D) exemption.

Moreover, Documents 1, 2, and 3 were all properly withheld pursuant to exemption (b)(5). Exemption (b)(5) protects inter- and intra-agency memorandums or letters from disclosure. Agencies base a (b)(5) exemption on three privileges: attorney work-product, deliberative process, and attorney-client privilege. *See, e.g.*, *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001) (invoking work-product privilege under exemption (b)(5); *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51, 95 S. Ct. 1504, 1516 (1975) (discussing "decision-making process" privilege under exemption (b)(5)); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252-53 (D.C. Cir. 1977) (noting that attorney-client privilege is also included under exemption (b)(5)). EOUSA contends that Document 1, a prosecution memorandum, and Document 2, a draft indictment from the U.S. Attorney's Office, contained matters relating to trial preparation and strategy. (Def.'s Mot. Ex. 2, Kornmeier Decl. II ¶ 15). Under the attorney work-product privilege, information that is collected in anticipation of litigation or trial is protected from discovery, absent there is a showing of need on the part of the requesting party. *Taylor v. Temple & Cutler*, 192 F.R.D. 552, 556 (E.D. Mich. 1999). Therefore, Documents 1 and 2 fall within the attorney work-product privilege and are exempted under (b)(5). Furthermore, according

14

to EOUSA, Document 3 is a legal document prepared "at an attorney's request or direction, and made in anticipation of litigation." (Def.'s Mot. Ex. 2, Kornmeier Decl. III ¶ 12). Therefore, Document 3 constitutes attorney work-product and is exempted under (b)(5).

Finally, Documents 1, 2, and 3 were all properly withheld pursuant to exemption (b)(7)(C). Plaintiff has failed to articulate a public interest which outweighs the individuals' right to privacy.

### C. **DEA Documents**

In her Declaration, Leila I. Wassom, a DEA Paralegal Specialist, describes the withheld documents contained the DEA Report of Investigation, DEA Form 202–the DEA Personal History Report, DEA Form 210–the DEA Defendant Disposition Report, and memoranda. (Def.'s Mot. Ex. 4, Wassom Decl. ¶¶ 48-49). The DEA Report of Investigation compiles investigative information, intelligence activities, and contains the names of DEA Special Agents. (*Id.* at ¶¶ 50-52). DEA Form 202 is a two-page form which identifies and classifies an individual prior to or at the time of an arrest and details the action being taken against that individual. (*Id.* at ¶ 54). Form 210 compiles DEA defendant statistics, as well as the means by which DEA and the FBI track individual cases brought against DEA defendants. (*Id.* at ¶ 55).

The DEA documents were properly withheld pursuant to exemption (b)(2), which exempts from disclosure information relating to the internal rules and practices of an agency. According to the DEA, most of the documents Plaintiff requests contain "violator identifiers" that are part of the DEA's internal system of identifying information and individuals. (*Id.* at ¶ 58). The DEA contends that if provided with the codes, "[s]uspects could decode this

15

information and change their pattern of drug trafficking in an effort to respond to what they determined the DEA knows about them or avoid detection and apprehension [and] create alibis for suspected activities." (*Id.* at ¶ 59).

In addition, the DEA documents were properly withheld pursuant to exemptions (b)(7)(C) and (b)(7)(D). According to the DEA, the responsive records were compiled during criminal law enforcement investigations of Plaintiff and several third parties. (Def.'s Mot. Ex. 4, Wassom Decl. ¶ 62). Plaintiff has not shown any legitimate public interest in the information withheld under exemption (b)(7)(C) and release of the information about third parties would constitute an unwarranted invasion of the personal privacy of those third parties. Furthermore, the documents contain information about "coded informants" who are assured by the DEA that their identity and the information they provide to the DEA will remain confidential. (Def.'s Mot. Ex. 4, Wassom Decl. ¶ 69). Therefore, the documents were properly withheld pursuant to exemption (b)(7)(D).

Finally, the DEA documents were properly withheld pursuant to exemption (b)(7)(F), which permits an agency to withhold information where disclosure of such information "could reasonably be expected to endanger the life or physical safety of any individual." The Court agrees that the DEA could withhold documents from Plaintiff where disclosing the documents could endanger DEA agents and individuals who provided information to the DEA.

### D. Criminal Division Document

According to the Criminal Division, the document is a 3-page prosecution memorandum dated July 21, 1987 from Alexander S. White, Attorney in the Organized

16

Crime and Racketeering Section, addressed to Paul W. Coffey, Deputy Chief of the Organized Crime and Racketeering Section. It was prepared by Criminal Division attorneys in conjunction with prosecution of a third party who was a member of a drug enterprise in which Butler was an alleged participant. (Def.'s Mot. Ex. 5, Hsu Decl. ¶ 22). The memorandum did not even mention Plaintiff. (*Id.* at ¶ 33).

The Court believes that the Criminal Division properly withheld the document pursuant to exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D). First, under exemption (b)(5), the memorandum is protected attorney work-product because it discusses the theory of the case and litigation strategies. (Def.'s Mot. Ex. 5, Hsu Decl. ¶¶ 25-26). Second, because Plaintiff has not shown any legitimate public interest in the information and releasing the information about a third party would be an unwarranted invasion privacy, the memorandum is exempted under (b)(6) and (b)(7)(C). Finally, the memorandum was properly withheld pursuant to exemption (b)(7)(D) because the information was provided under circumstances where an assurance of confidentiality could reasonably be inferred. The Criminal Division contends that: "The confidential source was associated with an activity directly related to criminal activity for which plaintiff and others were prosecuted. . . . these were extremely serious charges, including murder." (Def.'s Mot. Ex. 5, Hsu Decl. ¶ 41).

**E. IRS Document**

The document was a report written by Special Agent James F. Dowling containing grand jury investigation information. (Def.'s Mot. Ex. 6, Tate Decl. ¶ 3). According to the IRS, the report was about "the apparent violation of the Internal Revenue Code by an individual other than plaintiff." (*Id.*).

17

The IRS withheld the report in full pursuant to FOIA exemptions (b)(3) and (b)(5). The Court agrees that exemption (b)(3) applies to the report because the report contained grand jury investigation material exempted from disclosure by FED. R. CRIM. P. 6(e), as well as third party tax information exempted by 26 U.S.C. § 6103(a). (Def.'s Mot. Ex. 6, Tate Decl. ¶¶ 5-6). In addition, the attorney work-product privilege under exemption (b)(5) applies to the report because the report describes work done on behalf of and at the direction of the government's attorney. (*Id.* at ¶ 7).

Accordingly,

**IT IS ORDERED** that Plaintiff's Cross Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

_____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Francis L. Zebot, AUSA

James Butler, #160557
Newberry Correctional Facility
3001 Newberry Ave.
Newberry, MI 40868